[No. 58076-6.   En Banc.   March 19, 1992.]

THE STATE OF WASHINGTON, *Petitioner*, v. DONALD T. LAVIOLLETTE, *Respondent*.

*Arthur D. Curtis, Prosecuting Attorney,* and *Michael B. Dodds, Deputy,* for petitioner.

*James J. Sowder,* for respondent.

*Donald C. Brockett, Prosecuting Attorney for Spokane County,* and *Kevin M. Korsmo, Deputy,* on behalf of Washington Association of Prosecuting Attorneys, amicus curiae for petitioner.

*Mark W. Muenster, Steven W. Thayer,* and *Thomas C. Phelan* on behalf of Washington Association of Criminal Defense Lawyers, amicus curiae for respondent.

UTTER, J. — Donald Laviollette, the defendant, was charged and pleaded guilty to four charges of third degree theft in Clark County District Court. Subsequently, Laviollette was convicted in a separate proceeding of second

degree burglary arising out of the same incident in Clark County Superior Court. The State challenges a Court of Appeals decision reversing the burglary conviction of the defendant on the grounds of double jeopardy. It argues the Court of Appeals erred in applying the United States Supreme Court's double jeopardy test as set forth in *Grady v. Corbin*, 495 U.S. 508, 109 L. Ed. 2d 548, 110 S. Ct. 2084 (1990). Alternatively, it argues the Court of Appeals should have found the defendant guilty of the lesser included offense of criminal trespass in the first degree. We affirm the Court of Appeals.

On February 1, 1989, Donald Laviollette entered VMG Enterprises' building through an employees' entrance marked "Employees Only". VMG Enterprises is a production company and is not open to the general public. While inside the building, Laviollette met several employees and was observed in the employee locker room. He was a former employee of VMG Enterprises, and told employees he met that he had been rehired and was getting his things together to go to work. In fact, Laviollette had not been rehired, and had no permission to be in the building.

Subsequently, Laviollette was seen leaving VMG with a black jacket and some coveralls belonging to VMG. After he left, several items were missing from employees' lockers, including a black jacket. Later that night, a Vancouver police officer stopped a car for speeding in which Laviollette was a passenger. During that stop, the officer learned that Laviollette had an outstanding warrant for burglary in Oregon. The officer placed him under arrest. Later, another Vancouver police officer discovered that the black jacket Laviollette was wearing at the time of his arrest was one of the jackets taken from the employee lockers at VMG.

The defendant was charged with four counts of third degree theft on February 2, 1989, and arraigned in the Clark County District Court where he initially pleaded not guilty. Later, on February 27, 1989, the State charged the defendant with second degree burglary in a separate information. In his arraignment in the Clark County Superior

Court on the burglary charge, Laviollette pleaded not guilty on March 3, 1989. Then, on March 14, 1989, the defendant entered pleas of guilty to all four counts of third degree theft in district court.

Laviollette subsequently filed a motion to dismiss the burglary charge as a violation of double jeopardy. His motion was denied, because the Superior Court noted that the evidence required to convict the defendant of the offenses of theft and burglary was not the same. The defense and prosecution then stipulated to the facts of this case. After a brief bench trial, Laviollette was convicted of second degree burglary.

Laviollette appealed his conviction to the Court of Appeals. His assignments of error included the trial court's denial of his motions to suppress and to dismiss on grounds of double jeopardy. Brief of Appellant, at 1-3. While the appeal was pending, the United States Supreme Court decided *Grady v. Corbin*, 495 U.S. 508, 109 L. Ed. 2d 548, 110 S. Ct. 2084 (1990), in which the Court clarified double jeopardy analysis in multiple prosecution cases. The trial court did not have the benefit of this case. The Court of Appeals, applying the Court's analysis in *Grady* to the facts of this case, found that Laviollette's burglary conviction violated the double jeopardy clause of the federal constitution. *State v. Laviollette*, 60 Wn. App. 579, 805 P.2d 253 (1991). The Court of Appeals reversed the conviction and dismissed the burglary charge on double jeopardy grounds. The State sought review, and we affirm the Court of Appeals' decision.

I

■ The United States Supreme Court's decision in *Grady* is the applicable law in this case. The defendant, Laviollette, challenged his second prosecution as a violation of the double jeopardy clause of the federal constitution.[1] The

───────

[1] At the Court of Appeals, Laviollette argued that Washington's constitutional provision prohibiting double jeopardy contained in Const. art. 1, § 9 should be construed as giving greater protection than the federal double jeopardy provision. Neither party, however, has raised that issue before this court.

United States Supreme Court acts as the final arbiter of controversies arising under the federal constitution. *State v. Chrisman*, 100 Wn.2d 814, 816, 676 P.2d 419 (1984). Therefore, this court must follow the United States Supreme Court's recent formulation of double jeopardy analysis in *Grady*.

■ The double jeopardy clause of the federal constitution provides that no person shall be "subject for the same offense to be twice put in jeopardy of life or limb . . ." U.S. Const. amend. 5. The United States Supreme Court has stated that that clause embodies three protections: "It protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. And it protects against multiple punishments for the same offense." (Footnotes omitted.) *North Carolina v. Pearce*, 395 U.S. 711, 717, 23 L. Ed. 2d 656, 89 S. Ct. 2072 (1969). For purposes of double jeopardy, perhaps one of the most vexing issues has been to determine what "the same offense" means. Recently, the United States Supreme Court in *Grady* clarified what "the same offense" means in the context of multiple prosecutions.

*Grady* involved multiple prosecutions arising from a fatal traffic accident. The automobile of the defendant, Thomas Corbin, crossed a double yellow line and struck two vehicles. The driver of one of those vehicles, Brenda Dirago, died that evening as a result of the collision, and her husband, Daniel Dirago, was seriously injured. That night, while Corbin was being treated for his injuries, he received tickets charging him with driving while intoxicated and with failing to keep right of the median. A few days later, another assistant district attorney began gathering evidence for a homicide prosecution in connection with the accident. The prosecution of the minor offenses and the homicide prosecution were never coordinated. Corbin pleaded guilty to the two traffic tickets and received a minimal sentence on November 17, 1987. Two months later, on January 19, 1988, a grand jury investigating the accident indicted Corbin for

reckless manslaughter, second degree vehicular manslaughter, and criminally negligent homicide for causing the death of Brenda Dirago; third degree reckless assault for causing physical injury to Daniel Dirago; and driving while intoxicated. *Grady*, 495 U.S. at 513. Corbin moved to dismiss the indictment on statutory and constitutional double jeopardy grounds.

■ The Court in *Grady* began by noting that it had long employed the test adopted in *Blockburger v. United States*, 284 U.S. 299, 304, 76 L. Ed. 306, 52 S. Ct. 180 (1932) in determining whether a subsequent prosecution involved "the same offense" and was therefore barred by the double jeopardy clause. *Grady*, 495 U.S. at 510. In *Blockburger*, the Court wrote that

> The applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not.

*Blockburger*, 284 U.S. at 304. Another way of stating the *Blockburger* test is that if the elements of each offense are identical, or if one is a lesser included offense of the other, then a subsequent prosecution is barred. *Brown v. Ohio*, 432 U.S. 161, 166, 53 L. Ed. 2d 187, 97 S. Ct. 2221, 2225 (1977).

In determining what the "same offense" is for double jeopardy purposes, this court has applied a test that was basically identical to the *Blockburger* test. *State v. Roybal*, 82 Wn.2d 577, 512 P.2d 718 (1973). Although denominated a "same evidence" test, the court's analysis in *Roybal* indicates that it focused primarily on whether or not each offense contained "an additional element not included in the other." *Roybal*, 82 Wn.2d at 582.

The *Blockburger* test, however, was developed in the context of double jeopardy challenges to multiple punishments imposed in a single prosecution. In several decisions that preceded *Grady*, it was apparent that the *Blockburger* test

was not the exclusive means of determining whether multiple prosecutions violated double jeopardy. *See, e.g., Illinois v. Vitale,* 447 U.S. 410, 65 L. Ed. 2d 228, 100 S. Ct. 2260 (1980); *Brown v. Ohio,* 432 U.S. at 166 n.6. The Court in *Grady* described how multiple prosecutions raise more serious concerns than multiple punishments imposed in a single proceeding. For example, multiple prosecutions allow the State, with its greater resources, to subject a defendant to the expense and ordeal of multiple trials. *Grady,* 495 U.S. at 518. Moreover, allowing the State to proceed in successive trials gives it the opportunity to hone its trial strategies and perfect its evidence. *Grady,* 495 U.S. at 518. Therefore, the United States Supreme Court in *Grady* attempted to clarify the law of double jeopardy by adopting a 2-part analysis for determining when a defendant has been unconstitutionally subjected to multiple prosecutions for the same offense.

*Grady* requires that we first apply the traditional *Blockburger* test to determine whether the offenses have identical statutory elements or whether one is a lesser included offense of the other. *Grady,* 495 U.S. at 516. The Court outlined the second part of the test when it wrote:

> As we suggested in *Vitale,* the Double Jeopardy Clause bars any subsequent prosecution in which the government, to establish an essential element of an offense charged in that prosecution, will prove conduct that constitutes an offense for which the defendant has already been prosecuted.

(Footnote omitted.) *Grady,* 495 U.S. at 521.

The State suggests that *Grady* should not control this case because very different crimes were involved in that case. The Second Circuit in *United States v. Calderone,* 917 F.2d 717, 721 (2d Cir. 1990), observed that the rule announced in *Grady* was meant to apply to all double jeopardy claims arising in the context of successive prosecutions. In addition, the Hawaii Supreme Court recently used the *Grady* rule when it found that double jeopardy barred a burglary conviction following an earlier prosecution. *State v. Kipi,* ___ Hawaii ___, 811 P.2d 815 (1991).

## II

Next, the parties dispute the application of the 2-part *Grady* test to this case. The subsequent prosecution for burglary in this case does not violate the *Blockburger* test, the first part of the inquiry prescribed by *Grady*. Each offense, theft and burglary, requires proof of an element that the other does not. Second degree burglary requires entering or remaining unlawfully in a building with intent to commit a crime. RCW 9A.52.030(1). Theft, by contrast, requires obtaining or exerting unauthorized control over property with the intent to deprive the owner of that property. RCW 9A.56.020(1). Moreover, as the Court of Appeals noted, *State v. Laviollette*, 60 Wn. App. 579, 583, 805 P.2d 253 (1991), the antimerger statute precludes theft from being a lesser included offense of burglary. RCW 9A.52.050. Thus, the prosecution for burglary did not violate the *Blockburger* test.

Nevertheless, the parties dispute how this court should apply the second part of the test in *Grady*. In applying its new test, the Court in *Grady* looked closely at the prosecution's bill of particulars. That bill of particulars listed the following conduct as the basis for the homicide and assault charges brought in the second prosecution: (1) operating a motor vehicle while intoxicated, (2) failing to keep right of the median, and (3) driving approximately 45 to 50 miles per hour in heavy rain, which was a speed too fast for the weather and road conditions at the time of the accident. *Grady*, 495 U.S. at 522-23.

The Court noted that the State was seeking to prove the conduct for which Corbin had previously been convicted — driving while intoxicated and failing to keep right of the median — to establish essential elements of the homicide and assault offenses. Therefore, the Court held that the subsequent prosecution was barred. The Court noted, however, that its holding would not bar a subsequent prosecution on the homicide and assault charges if the bill of particulars had revealed that the State would not rely on the conduct for which Corbin had already been convicted. In

other words, if the State had relied solely on Corbin's driving too fast in heavy rain to establish recklessness or negligence, double jeopardy would not have barred his subsequent prosecution. In this subtle way, the Court distinguished its test in *Grady* from the "same transaction" test which Justice Brennan had long supported. *Grady*, 495 U.S. at 523-24 n.15.

In the instant case, the trial court entered its own findings of fact and conclusions of law, and incorporated the parties' stipulated facts by reference into its decision. Both the findings of fact and the stipulated facts indicate that the trial court relied on conduct for which Laviollette had been prosecuted when it found him guilty of burglary. The State has challenged neither the court's findings of fact nor the stipulated facts. Specifically, the findings of fact state:

> 3. That the defendant entered or remained in the building for the purpose of committing the crime of Theft. The defendant did, while inside, wrongfully obtained [*sic*] property belonging to employees of the VMG Enterprises which was obtained from lockers in the employee's locker room. Among the items taken included a black jacket and a leather jacket.
> 4. That the defendant took these items with the intent to permanently deprive the appropriate owners of the jackets and other items . . ..

Findings of fact 3, 4. The stipulated facts, which were incorporated by reference by the trial court in its findings of fact, state that:

> 12. The defendant was charged by Citation with four counts of Theft in the Third Degree and entered pleas of guilty to those offenses on March 14th, 1989. The four counts of Theft in the Third Degree pertain to the thefts from four of the lockers contained in the VMG building and were the underlying crimes upon which the intent to commit a crime was based.

Stipulated fact 12. Establishing that a person has an intent to commit a crime against a person or property is an essential element of second degree burglary. RCW 9A.52.030. Following the *Grady* analysis, it is clear that the trial court relied on conduct for which Laviollette had already been prosecuted — his theft from lockers at VMG — to establish

that Laviollette had the intent to commit a crime when he entered VMG. Therefore, the second prosecution for burglary violates the double jeopardy clause of the federal constitution.

The State argues that it could have relied on other evidence to establish the criminal intent element of burglary. For example, the State notes that there is a permissible inference that anyone who enters a building unlawfully or remains unlawfully is presumed to have a criminal intent. RCW 9A.52.040. The trial court's findings and the stipulated facts which were incorporated by reference, however, indicate that the trial court relied solely on the theft convictions to establish the intent element of the burglary conviction.[2]

### III

The State argues that even if the Court of Appeals was correct in finding that the burglary conviction violated double jeopardy, it nevertheless committed error by failing to find the defendant guilty of the lesser included offense of criminal trespass. The State did not raise this "fall back" argument in its brief to the Court of Appeals, nor did it move that court to reconsider its decision. Although the Rules of Appellate Procedure do not directly prohibit raising this matter for the first time on review, nevertheless, the State should have given the Court of Appeals the opportu-

---

[2]The State argues that it did not violate the double jeopardy clause because it did not use the same conduct for which the defendant already has been prosecuted to establish the *entirety* of a statutory element in the burglary prosecution. *See United States v. Felix*, 926 F.2d 1522, 1532 (10th Cir.) (Anderson, J., dissenting), *cert. granted*, ___ U.S. ___, 116 L. Ed. 2d 25, 112 S. Ct. 47 (1991); *United States v. Calderone*, 917 F.2d 717, 722 (2d Cir. 1990) (Newman, J., concurring). The authors of both opinions cited by the State were trying to harmonize the Supreme Court's decision in *Grady* with the Supreme Court's decision in *Dowling v. United States*, 493 U.S. 342, 107 L. Ed. 2d 708, 110 S. Ct. 668 (1990). The facts of this case, however, are much more similar to those in *Grady* than those in *Dowling, Felix,* or *Calderone*. This case, like *Grady*, involved a brief episode of criminal conduct, not an ongoing criminal enterprise. A critical factor distinguishing this case from *Felix* or *Calderone* is that the trial court's findings of fact indicate it relied exclusively on Laviollette's theft convictions to find the intent element of the burglary conviction.

nity to rectify its error by filing a motion for reconsideration. This court has previously stated that it will refrain from reviewing questions not raised in the Court of Appeals. *State v. Cunningham*, 93 Wn.2d 823, 837, 613 P.2d 1139 (1980); *Peoples Nat'l Bank v. Peterson*, 82 Wn.2d 822, 830, 514 P.2d 159 (1973). There are limited exceptions to this rule, where issues pertain to jurisdiction, right to maintain an action, illegality, invasion of fundamental constitutional rights, and lack of claim of relief. *Peoples Nat'l Bank*, 82 Wn.2d at 830. None of those exceptions apply here. Accordingly, we decline to consider whether the defendant is guilty of the lesser included offense of criminal trespass.

## IV

■ The final issue is whether this court should remand this case to the trial court to allow the prosecutor the chance to retry the defendant for burglary based on conduct not used to convict him of theft. Only amicus Washington Association of Prosecuting Attorneys raises the issue of whether a remand would be appropriate. This court need not consider arguments raised only by an amicus. *Coburn v. Seda*, 101 Wn.2d 270, 279, 677 P.2d 173 (1984). In addition, this argument, like the lesser included offense argument, was not presented to the Court of Appeals in a motion for reconsideration. For these reasons, we decline to consider a remand in this case.

Therefore, the decision of the Court of Appeals reversing the burglary conviction and dismissing the charge is affirmed.

DORE, C.J., and BRACHTENBACH, DOLLIVER, ANDERSEN, DURHAM, SMITH, GUY, and JOHNSON, JJ., concur.