[No. 35835-9-I. Division One. August 12, 1996.]

THE STATE OF WASHINGTON, *Respondent*, v. MARK WILLIAM GRANT, *Appellant*.

*Jonathan T. Stier* and *Nielsen & Acosta,* for appellant.
*Norm Maleng, Prosecuting Attorney,* and *Pamela Mohr, Deputy,* for respondent.

KENNEDY, J. — Mark Grant appeals his conviction of one count of domestic violence felony violation of post-sentence court order, contending that the trial court erred in admitting evidence of his prior assault conviction under ER 609(a). The State cross appeals, contending that the trial court erred in holding that evidence of Grant's prior assaults on the victim was inadmissible under ER 404(b). We hold that evidence of Grant's prior assaults on the victim was properly admissible under ER 404(b) because it was relevant in assessing the victim's credibility as a witness and accordingly in determining whether the assault in fact occurred, and because the probative value of the evidence outweighed its prejudicial effect. Any error in

admitting the evidence under ER 609(a) was thus harmless. Grant also contends that his prosecution for felony violation of post-sentence court order violated double jeopardy. Because jeopardy did not attach under the circumstances of this case, however, we reject Grant's second challenge and affirm his conviction.[1]

## FACTS

In 1994, Mark and Maria Grant had been married approximately seven years and had a four-year-old child, William. In May of 1994, Mark Grant was convicted of second degree assault of Ms. Grant. At sentencing, the court issued an order prohibiting Grant from contacting Ms. Grant for a period of ten years. The court warned Grant that an assault in violation of the order could be prosecuted as a felony.

On July 29, 1994, within days of Grant's release from prison on his assault conviction, Ms. Grant was at a friend's house with William, when Grant arrived. Because she wanted to avoid a scene with Grant, Ms. Grant stayed at the house with him for a period of time, drinking beer and watching movies. When Ms. Grant decided it was time to leave, Grant resisted. He told her she could not take William with her because she was intoxicated. When Ms. Grant insisted on leaving, an altercation ensued during which Grant tore her keys from her hand, cutting her finger. Ms. Grant subsequently permitted Grant to accompany her and William in the car.

While Ms. Grant was driving the car, Grant sat on the passenger side with William on his lap. Ms. Grant testified that Grant began berating her, and that he hit her with his hands as well as with the child's tennis shoes. When Grant attempted to exit the moving car with William, Ms. Grant brought the car to a stop in the middle of the road. Grant began running away with William and

---

[1]Grant's remaining challenge alleging prosecutorial misconduct is treated in the unpublished portion of this opinion.

Ms. Grant followed, screaming. Bystanders who witnessed the commotion in the street called the police, who arrived shortly thereafter. When he saw the police, Grant told Ms. Grant not to identify him or she would regret it. Ms. Grant initially complied, but when the police removed Grant from her presence, she identified him as her attacker.

On August 3, 1994, the King County prosecutor charged Grant with domestic violence felony violation of post-sentence court order in violation of RCW 10.99.050(2) and 10.99.040(4). On August 16, 1994, Grant's community correction officer filed an order for arrest and detention, alleging that Grant had violated conditions of his supervision by having contact with Ms. Grant. The officer submitted a "Notice of Violation" report to the court on August 22, 1994. Following a hearing on August 25, 1994, Judge Alsdorf found that Grant had violated his supervision by having contact with Ms. Grant. Judge Alsdorf issued an order modifying the assault sentence entered on June 17, 1994, imposing an additional confinement of 30 days for each violation of the conditions of Grant's sentence.

On October 18, 1994, Grant moved to dismiss the information charging domestic violence felony violation of post-sentence court order, arguing that it was barred by the double jeopardy clause of the Fifth Amendment to the United States Constitution and article I, section 9 of the Washington State Constitution. The trial court denied Grant's motion to dismiss, finding that under *United States v. Dixon*[2] and *Blockburger v. United States*,[3] double jeopardy did not preclude the prosecution because, given the required element of an assault for domestic violence felony violation of post-sentence court order, "the violation that is alleged in this case contains a fact not found and not necessary to be found by Judge Alsdorf at the time he made his findings." Report of Proceedings at 18.

[2]509 U.S. 688, 113 S. Ct. 2849, 125 L. Ed. 2d 556 (1993).

[3]284 U.S. 299, 52 S. Ct. 180, 76 L. Ed. 2d 306 (1932).

On that same day, the State sought to admit evidence of prior assaults by Grant against Ms. Grant. The trial court issued a series of rulings. The court held first that Grant's prior convictions were not admissible under ER 404(b). Noting that prior convictions are admissible under ER 404(b) to prove such factors as motive, opportunity, and intent, the court held that it was "satisfied that there are circumstances in which those exceptions may be present in this case but at this point based on the representations of Counsel, I'm satisfied that they are not admissible basically because at this juncture they are not relevant. And they are certainly the kind of other crime that is anticipated by 404(b)." Report of Proceedings at 36. Second, balancing the probative value of the evidence against its prejudicial effect, the trial court held that if Grant testified at trial, his prior convictions would be admissible under ER 609(a) for impeachment purposes.[4] Finally, the trial court held that prior instances of conduct would be

---

[4]The court explained its ruling as follows:

"With regard to the convictions under 609, however, which is basically impeachment should Mr. Grant testify, the Court is required to do a balancing of the prejudicial effects, whether they are outweighed by the probative value. Based on the representations by Counsel I am satisfied that should Mr. Grant testify then the prior convictions would be admissible for impeachment.

". . . .

"[I]n this particular case the factors that I am satisfied are relevant are that this is a recent conviction. It is of the same kind. It is alleged to be involving the same victim. And I am satisfied that where there is an identity of defendants and victims that it becomes very relevant to have the prior convictions in use for impeachment.

"I am satisfied therefore that the probative value is – there is prejudice and there always is when they use prior convictions. But I'm satisfied there is probative value that makes it important that should Mr. Grant testify that the prior convictions as to the same victim be known to the jury.

"In other words, we have a circumstance where there is a logical relevance to the fact that a defendant has a prior conviction for assaulting Victim A and is being charged with an offense where one of the elements is assaulting Victim A. I'm satisfied that that makes the probative value very high.

"In other words, I'm saying that where there was a prior history of assaultive conduct against the same alleged victim, it does become extremely relevant to the case.

"So I'm satisfied that should Mr. Grant testify that those convictions would be admissible under 609 for impeachment purposes." Report of Proceedings at 36-38.

admissible under ER 608(b) only if the defense challenged Ms. Grant's credibility.

The case was tried to a jury on October 27, 1994. Grant testified at the trial. During cross examination, the prosecutor questioned Grant about the assault conviction which led to the no-contact order. In response to a question regarding whether Ms. Grant ever expressed fear of being in a relationship with him, Grant answered:

> Because of the assault. I don't know if she would - I imagine she might be. I mean, I only saw her two or three times after that. But we talked about it. Like I said, she was still friendly to me. She didn't show that she was afraid of me no more. It's something I wasn't proud of. But it just happened. We got in an argument and it happened.

Report of Proceedings at 159-60. The prosecutor then asked: "It wasn't an isolated incident was it, Mr. Grant?" Report of Proceedings at 160. Defense counsel objected and, following a sidebar, the trial court sustained the objection.

At the conclusion of the trial, the jury found Grant guilty as charged and the court sentenced him within the standard range. Grant appeals his conviction, and the State cross-appeals the trial court's ER 404(b) evidentiary ruling.

## DISCUSSION

### A. Evidence of Prior Assaults

Grant contends that the trial court erred in holding that evidence of his prior assaults on Ms. Grant was admissible under ER 609(a). The State responds that the evidence was properly admissible under ER 609(a) because the probative value of Grant's prior assaults outweighed their prejudicial effect. In its cross appeal, the State contends that even if the evidence were inadmissible under ER 609(a), it was properly admissible under ER 404(b) and thus Grant has failed to provide a basis for

reversal of his conviction. Although we are skeptical that the evidence was admissible under ER 609(a), we hold that evidence of Grant's prior assaults on Ms. Grant was admissible under ER 404(b) and accordingly any error in admitting the evidence under ER 609(a) was harmless.

■ Decisions as to the admissibility of evidence are within the discretion of the trial court, and are reversible only for abuse of that discretion. *State v. Powell*, 126 Wn.2d 244, 258, 893 P.2d 615 (1995); *State v. Smith*, 115 Wn.2d 434, 444, 798 P.2d 1146 (1990). Discretion is abused if it is manifestly unreasonable, or exercised on untenable grounds or for untenable reasons. *State v. Alexander*, 125 Wn.2d 717, 732, 888 P.2d 1169 (1995); *State v. Herzog*, 69 Wn. App. 521, 524-25, 849 P.2d 1235, *review denied*, 122 Wn.2d 1021 (1993).

■ ■ Under ER 404(b), evidence of other crimes, wrongs, or acts is presumptively inadmissible to prove character and show action in conformity therewith. *Powell*, 126 Wn.2d at 258; ER 404(b). Such evidence is admissible, however, for other purposes "such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." ER 404(b). The list of other purposes for which evidence of a defendant's prior misconduct may be introduced is not exclusive. *See State v. Lane*, 125 Wn.2d 825, 831, 889 P.2d 929 (1995).

> If admitted for other purposes, a trial court must identify that purpose and determine whether the evidence is relevant and necessary to prove an essential ingredient of the crime charged. Evidence is relevant and necessary if the purpose of admitting the evidence is of consequence to the action and makes the existence of the identified fact more probable.

*Powell*, 126 Wn.2d at 258-59 (citations omitted). Such evidence is admissible if its probative value outweighs its prejudicial effect. *State v. Lough*, 125 Wn.2d 847, 853, 889 P.2d 487 (1995).

■■ Citing *State v. Wilson*, 60 Wn. App. 887, 808 P.2d 754, *review denied*, 117 Wn.2d 1010 (1991) the State

contends that evidence of Grant's prior assaults was admissible under ER 404(b) because it was relevant and necessary to assess Ms. Grant's credibility as a witness and accordingly to prove that the charged assault actually occurred. We agree. In *Wilson,* the defendant was charged with one count of statutory rape and one count of indecent liberties. At trial, the court admitted evidence of the defendant's history of physical abuse of the victim. Following his conviction on both counts, the defendant appealed, contending that the evidence of prior physical abuse was inadmissible under ER 404(b). Division Two of this court affirmed the convictions, holding that the evidence was admissible to explain the victim's delay in reporting the abuse and to rebut the implication that the molestation did not occur:

> The evidence of the physical assaults was relevant to rebut the evidence presented by [the defendant] and other witnesses that the sexual abuse did not occur. That testimony would have gained unwarranted credibility had the court prevented the victim from testifying that she never reported the abuse and was unable to resist or escape the abuse out of fear of [the defendant]. The evidence is relevant because it tends to make the existence of a material fact, that [the defendant] sexually abused the victim, more probable.

*Wilson,* 60 Wn. App. at 890.

Similar principles support the admissibility of a defendant's history of domestic violence under ER 404(b) in cases such as the present one in which the current charge involves yet another alleged act of domestic violence toward the same victim. Such evidence is properly admissible in the sound discretion of the trial court under ER 404(b) when it is relevant — when it makes a fact of consequence to the determination of the action more or less likely — and when its probative value outweighs its prejudicial effect. Here, the State sought to admit evidence of Grant's prior assaults on Ms. Grant to explain her statements and conduct which might otherwise appear inconsistent with her testimony of the assault at issue in the

present charge. As is reflected in the present case, victims of domestic violence often attempt to placate their abusers in an effort to avoid repeated violence, and often minimize the degree of violence when discussing it with others.[5] The

---

[5]A victim's apparently inconsistent response to abuse may stem from any number of reasons. Some victims minimize or deny abuse because they fear retaliation by the abuser:

> The perpetrators in these cases may have terrorized the abused party over the period of time between the assault and the time of the court proceeding in order to coerce the abused party into lying. The perpetrator may increase the violence and the threats of violence, or they may bargain with the abused party to change the story with promises that if they do, the violence will stop.

A. Ganley, Ph.D., *Domestic Violence: The What, Why and Who, As Relevant to Civil Court Domestic Violence Cases,"* contained in DOMESTIC VIOLENCE CASES IN THE CIVIL COURT: A NATIONAL MODEL FOR JUDICIAL EDUCATION 20, The Family Violence Prevention Fund (1992).

Other victims minimize or deny abuse out of a sense of hopelessness or mistrust of the ability of the judicial system to protect them:

> Sometimes the abused party lies about the abuse because they have been told by law enforcement, lawyers, counselors, their ministers, etc. that nothing can be done, and that only the abused party can stop the violence by changing the behavior that makes the perpetrator angry. In such cases, the abused party has learned that the systems with the power to intervene will not act. Thus they are forced to try to work out their own deals with the abuser in hopes of stopping the abuse.

A. GANLEY, *Domestic Violence* at 20.

Moreover, victims of domestic violence may remain with their abuser for similar reasons:

> The primary reason given by victims of domestic violence for staying with the perpetrator is the realistic fear of the escalating violence. Victims may know from past experience that the violence gets worse whenever they attempt to get help. Research shows that domestic violence tends to escalate when the victim leaves the relationship. National Crime Statistics show that in almost 75% of reported spousal assaults, the partners were divorced or separated. (U.S. Dept. of Justice, 1983, Washington D.C.). Perpetrators may repeatedly tell the abused party that she/he will never be free of them. The abused party believes this as a result of past experience. When they did attempt to leave, the perpetrator may have tracked them down or abducted the children in the attempt to get the victim back.

A. GANLEY, *Domestic Violence* at 20.

Grants' history of domestic violence thus explained why Ms. Grant permitted Grant to see her despite the no-contact order, and why she minimized the degree of violence when she contacted Grant's defense counsel after receiving a letter from Grant, sent from jail. Ms. Grant's credibility was a central issue at trial. The jury was entitled to evaluate her credibility with full knowledge of the dynamics of a relationship marked by domestic violence and the effect such a relationship has on the victim. The State sought to admit evidence of these dynamics through testimony of Ms. Grant's therapist.

That the trial court recognized the relevance and probative value of the evidence of Grant's prior assaults on Ms. Grant is clear from its oral ruling with respect to ER 609:

> [I]n this particular case the factors that I am satisfied are relevant are that this is a recent conviction. It is of the same kind. It is alleged to be involving the same victim. And I am satisfied that where there is an identity of defendants and victims that it becomes very relevant to have the prior convictions in use for impeachment.

> I am satisfied therefore that the probative value is – there is prejudice and there always is when they use prior convictions. But I'm satisfied there is probative value that makes it important that should Mr. Grant testify that the prior convictions as to the same victim be known to the jury.

> In other words, we have a circumstance where there is a logical relevance to the fact that a defendant has a prior conviction for assaulting Victim A and is being charged with an offense where one of the elements is assaulting Victim A. I'm satisfied that that makes the probative value very high.

> In other words, I'm saying that where there was a prior history of assaultive conduct against the same alleged victim, it does become extremely relevant to the case.

Report of Proceedings at 37-38.

■ ■ We agree with the trial court's determination of relevance, but believe the determination of relevance and the balancing of probative value versus prejudice should have been done in the context of ER 404(b) rather than ER 609(a).[6] As the trial court implicitly recognized, domestic violence tends to recur, and to intensify in frequency and degree of violence over time. Expert testimony would have shown that the consequences of domestic violence often lead to seemingly inconsistent conduct on the part of the victim. In the present case, the history of domestic violence and expert testimony explaining Ms. Grant's otherwise seemingly inconsistent statements and conduct could properly have been admitted under ER 404(b), at the very least for the purpose offered by the State of explaining Ms. Grant's inconsistent statements and conduct.[7] Any error in admitting the evidence under ER 609(a) was, accordingly, harmless.

---

[6]Although the list of exceptions contained in ER 404(b) is not exclusive, the trial court appeared to treat the list as exclusive in holding that evidence of Grant's prior assaults was inadmissible under ER 404(b) for lack of relevancy. This was an untenable ground for rejecting the evidence. The court thus did not balance the probative value of the evidence against its prejudicial effect until it reached the analysis under ER 609(a). Because we have the benefit of the trial court's balancing under ER 609(a), we are assured that the court would, indeed, have admitted the evidence under ER 404(b) had it not misunderstood the parameters of the exceptions; thus we need not remand for the trial court's determination on the relevance versus probative value.

[7]Other jurisdictions have held that evidence of prior acts of domestic violence toward the same victim is admissible under ER 404(b), some for even broader purposes than offered here. See State v. Gibbons, 256 Kan. 951, 889 P.2d 772, 780 (1995) (holding that, notwithstanding the rule prohibiting admission of other crimes evidence, evidence of prior physical abuse of spouse may ordinarily be admitted to establish the relationship of the parties, to show the existence of a continuing course of conduct between the parties, to corroborate the testimony of witnesses, or to show motive or intent); State v. Elvin, 481 N.W.2d 571, 575 (Minn. App. 1992), (holding that evidence of prior domestic violence is admissible to illuminate the relationship between the defendant and the victim), review denied (1992). See also State v. Johnson, 73 Ohio Misc. 2d 1, 657 N.E.2d 383, 384 (1994) (holding that defendant's prior convictions for crimes of violence against same victim are admissible in domestic violence threat cases as proof of element of crime charged, and as proof of defendant's intent, motive, or absence of mistake or accident); State v. Kelly, 89 Ohio App. 3d 320, 624 N.E.2d 733, 734-35 (1993) (holding that although history of domestic violence was not inextricably related to crimes charged and accordingly not admissible as "other acts" evidence under ER 404(b), history of domestic violence was admissible to show victim's state of mind and to explain why she did not try to escape from

## B. Double Jeopardy

Grant next contends that his prosecution for felony violation of post-sentence court order violates double jeopardy under the same conduct test of *State v. Laviollette*, 118 Wn.2d 670, 826 P.2d 684 (1992). He also contends that the double jeopardy clause of the Washington Constitution provides broader protection than the double jeopardy clause of the Federal Constitution. The recent Washington Supreme Court decision of *State v. Gocken*, 127 Wn.2d 95, 896 P.2d 1267 (1995) disposes of both of Grant's arguments.

■ In *Gocken*, the Supreme Court rejected the defendant's argument that the double jeopardy clause of the Washington Constitution provides broader protection to criminal defendants than the double jeopardy clause of the Federal Constitution. *Gocken*, 127 Wn.2d at 107. Bringing this state in line with United States Supreme Court precedent, the Court held that the *Blockburger*[8] "same elements" test, rather than the *Grady*[9] "same conduct" test, applies to determine whether successive prosecutions violate the double jeopardy clause of art. I, § 9. *Gocken*, 127 Wn.2d at 107. Under the same elements test, the critical inquiry is whether the two offenses for which the defendant was tried are actually one offense. The offenses remain distinct if each requires proof of an element not required for proof of the other. *Gocken*, 127 Wn.2d at 101.

■ Grant does not argue that his prosecution violates double jeopardy under the same elements test. Although

defendant or summon police); *People v. Zack*, 184 Cal. App. 3d 409, 229 Cal. Rptr. 317, 320 (1986) (holding that evidence of defendant's prior assaults on victim he was alleged to have murdered was admissible based solely on consideration of identical perpetrator and victim), *review denied* (1986); *Lindsey v. State*, 135 Ga. App. 122, 218 S.E.2d 30, 31 (1975) (holding that prior attempts to commit same crime against same victim are generally admissible).

[8]*Blockburger v. United States*, 284 U.S. 299, 52 S. Ct. 180, 76 L. Ed. 2d 306 (1932).

[9]*Grady v. Corbin*, 495 U.S. 508, 110 S. Ct. 2084, 109 L. Ed. 2d 548 (1990), *overruled on other grounds by United States v. Dixon*, 509 U.S. 688, 113 S. Ct. 2849, 125 L. Ed. 2d 556 (1993).

such an argument might initially appear persuasive,[10] the argument ultimately would fail because jeopardy does not attach for double jeopardy purposes under the circumstances presented in this case. *See State v. Dupard*, 93 Wn.2d 268, 273 n.2, 609 P.2d 961 (1980). Here, the order of confinement imposed by Judge Alsdorf for Grant's violation of the conditions of his sentence was a continuing consequence of Grant's *original* conviction. The order of confinement was not a part of, and does not preclude, the subsequent criminal prosecution for felony violation of a no-contact order. *See Standlee v. Smith*, 83 Wn.2d 405, 407, 518 P.2d 721 (1974). Thus, we reject Grant's contention that his prosecution for felony violation of post-sentence court order violated double jeopardy.

Affirmed.

The remainder of this opinion has no precedential value and will be filed for public record in accordance with the rules governing unpublished opinions.

BAKER, C.J., and ELLINGTON, J., concur.

---

[10]The offenses would not appear to remain distinct because Grant's violation of the conditions of his sentence did not require proof of an element not required for proof of the charge of felony violation of a no-contact order; i.e., the violation of the no-contact order was sufficient to prove that Grant violated the conditions of his sentence. However, proof of a violation of a no-contact order was also required for the charge of felony violation of a no-contact order. Thus, the two offenses might actually appear to be one offense under *Gocken*.