IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON,<br><br>　　　　　　　　Respondent,<br><br>　　　　v.<br><br>ASYA RUTHEA BRADFORD,<br><br>　　　　　　　　Appellant. | No. 85536-1-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION |

SMITH, C.J. — Asya Bradford was charged and subsequently found guilty of second degree assault of a child, which included acts with a knife and a metal bat. Bradford appeals and asserts that the court erred in allowing the State to present evidence of a prior, uncharged act of violence by Bradford, and in not providing the jury with a unanimity instruction regarding the assault charge. Finding no error, we affirm.

## FACTS

In 2019, seven-year-old I.B. was living with her father, stepmother, brothers, and sister. In January 2019, I.B. reported to child protective services (CPS) that her stepmother, Asya Bradford, had hit her with a belt. Bradford admitted she had hit I.B., but stated it was merely parental discipline that had "gone awry."

Several months later, in September 2019, while I.B. and her family were eating dinner, Bradford became angry with I.B. for reporting the January incident

to CPS. I.B. believed Bradford was mad at her because she "was destroying the family, and [she] wasn't good." Bradford was crying and yelling and told I.B., "I will murder you." Bradford grabbed I.B. from behind and put a knife to her throat. I.B.'s brothers and father screamed at Bradford to stop. I.B.'s father managed to take the knife from Bradford. There were no visible marks left on I.B. from the knife.

After I.B.'s father took the knife from Bradford, she grabbed a metal bat from a nearby closet. Bradford began hitting C.C., I.B.'s brother, and I.B.'s father. Bradford then hit I.B. on the leg, but before Bradford could hit I.B. again, C.C. covered I.B. with his body. I.B.'s father got the bat away from Bradford and I.B. was able to get up. Eventually I.B. made it to her bedroom.

The next day at school, I.B. reported the incident to the school counselor. I.B. told the counselor that her mom had suffocated her, put a knife to her neck, and hit her with a metal bat. After school, I.B. was placed on a bus to her daycare and CPS was notified. That same day I.B. spoke with a deputy from the Snohomish County Sherriff's Office and, later, a forensic nurse. I.B. told the nurse that her mom "was trying to murder [her] with the knife," but when asked to tell the nurse more, I.B. said she wanted to "talk about something else." The nurse attempted to obtain photographs of some small bruises on I.B.'s back, but I.B. refused. I.B. was worried someone would show her parents the photographs.

In subsequent interviews, I.B. continued to express reluctance to talk about the incident. I.B. also had slightly different variations of the incident.

2

During an interview with a forensic nurse examiner, in response to a question about a bat, I.B. stated, "[w]e don't talk about the bat." Only after the advocate who had accompanied I.B. left the room did I.B. talk to the nurse. I.B. said that her mother had gotten angry with her and held a knife to her throat and hit her in the stomach with a metal bat.

In another interview with a child interview specialist, I.B. hesitated to answer the specialist's questions. I.B. worried that her dad and Bradford would see the recording. Eventually, I.B. did describe the incident, telling the specialist that Bradford was swinging the knife and a "little bit" of blood was on it.

Bradford was charged with second degree assault of a child. At trial, the court allowed the State to bring in evidence of Bradford's previous abuse of I.B. Bradford declined a limiting instruction to the jury. In its closing argument, the State argued that both being struck by a bat or having a knife held against one's neck could constitute "intentional touching or striking of another that is harmful or offensive," a necessary element of the charge. The jury found Bradford guilty of second degree assault of a child.

## ANALYSIS

### Admission of Evidence

Bradford contends that the court erred when it admitted evidence of previous abuse allegations against Bradford. The State asserts that the evidence was used for other, admissible purposes and its probative value outweighed any prejudicial effect. We agree with the State.

3

This court reviews a trial court's decision to admit evidence under ER 404 for abuse of discretion. State v. Dennison, 115 Wn.2d 609, 627-28, 801 P.2d 193 (1990). "A trial court abuses its discretion when its decision is manifestly unreasonable or based on untenable grounds or reasons." State v. Sullivan, 18 Wn. App. 2d 225, 234, 491 P.3d 176 (2021).

Washington Rules of Evidence (ER) 404(b) determines the admissibility of evidence of other crimes, wrongs or acts. It provides:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

The list of other purposes included in ER 404(b) is non-exhaustive. State v. Gresham, 173 Wn.2d 405, 420, 269 P.3d 207 (2012).

Before a court can admit evidence of a prior act, it must (1) find by a preponderance of the evidence that the misconduct occurred, (2) identify the purpose for which the evidence is sought to be introduced, (3) determine whether the evidence is relevant to prove an element of the crime charged, and (4) weigh the probative value against the prejudicial effect. State v. Thang, 145 Wn. 2d 630, 642, 41 P.3d 1159, 1165 (2002).

Here, the parties do not dispute that the first prong is met. The parties disagree regarding the evidence's purpose, relevance, and probative value.

1. Purpose

Bradford claims the admission of allegations of previous abuse were offered to show her propensity for committing the crime charged and,

4

therefore, is inadmissible. The State contends the evidence was used for admissible purposes, such as Bradford's intent and motive, I.B.'s state of mind, dynamics of the relationship, and I.B.'s credibility.

### a. Motive

The evidence supports that Bradford's prior abuse of I.B. was motive for the current incident. "Motive" is the moving course, the impulse, the desire that induces criminal action on part of the accused. State v. Powell, 126 Wn.2d 244, 260, 893 P.2d 615 (1995). Evidence of prior assaults or threats is admissible to show motive. Powell, 126 Wn.2d at 260. Here, I.B. testified that the reason Bradford was mad at her on the day of the attack was because she had "told [CPS] . . . about the bruises and things" from the previous abuse. I.B. believed Bradford blamed her for "destroying the family." Because the prior abuse was a catalyst for the current incident, evidence of the prior abuse goes to Bradford's motive.

### b. State of Mind

The prior abuse is also related to I.B.'s state of mind. Evidence of abuse is admissible to prove the victim's state of mind when it is an element of the offense. State v. Ashley, 186 Wn.2d 32, 44, 375 P.3d 673 (2016). Evidence of abuse can be helpful to show the victim reasonably feared the defendant. Ashley, 186 Wn.2d at 45 ("It is unquestionably reasonable . . . to conclude that a domestic violence victim would continue to fear her tormentor, even years after the last incident of abuse.") Here, the jury was instructed that assault is "an act done with intent to create in

another apprehension and fear of bodily injury, and which in fact creates in another a reasonable apprehension and imminent fear of bodily injury." Because I.B.'s state of mind is relevant to the charge—it must be shown that I.B. experienced reasonable fear—evidence of prior abuse is admissible.

### c. Credibility

Evidence of prior abuse is also admissible to support I.B.'s credibility. When a witness gives conflicting statements about the defendant's conduct, evidence of past violence may be admissible to explain inconsistent accounts of the event. State v. Gunderson, 181 Wn.2d 916, 925, 337 P.3d 1090 (2014). Inconsistent accounts of an event can stem from the relationship between the victim and defendant. State v. Grant, 83 Wn. App. 98, 107-08, 920 P.2d 609 (1996). "Victims . . . often attempt to placate their abusers in an effort to avoid repeated violence, and often minimize the degree of violence when discussing it with others." Grant, 83 Wn. App. at 107. Understanding the dynamics of the relationship between the victim and defendant, including past abuse, helps the jury evaluate the credibility of a witness. Grant, 83 Wn. App. at 108 ("The jury was entitled to evaluate [the witness's] credibility with full knowledge of the dynamics of a relationship marked by domestic violence and the effect such a relationship has on the victim.")

Here, Bradford highlighted conflicting accounts of the events, and the State explicitly stated that I.B.'s credibility "is going to be in question." Evidence of the prior abuse helps explain why discrepancies occurred in

I.B.'s statements to some of the witnesses and I.B.'s reluctance to allow photographs.  I.B. was worried someone would show the pictures to her parents and Bradford would get mad, because that is what happened when the prior abuse occurred.  Because the occurrence of prior abuse is being used to support I.B.'s credibility, it is admissible.

### 2. Relevance

In addition to identifying an admissible purpose, the State must show the evidence is relevant before it can be admitted.  State v. Lough, 125 Wn.2d 847, 861-62, 889 P.2d 487 (1995).  Evidence is relevant "if the purpose of admitting the evidence is of consequence to the action and makes the existence of the identified fact more probable."  Powell, 126 Wn.2d at 259.  When a prior history of abuse exists against the same victim, that prior history "become[s] extremely relevant to the case."  Grant, 83 Wn. App. at 108.

Here, the evidence of prior abuse is relevant because it tends to show Bradford's motive for committing the charged crime and I.B.'s reasonable apprehension of bodily injury.  The evidence also helps to explain I.B.'s inconsistent statements regarding the assault and aids the jury in evaluating her credibility.  For these reasons, the evidence is relevant to prove an element of the assault charge.

### 3. Probative Value

Finally, before evidence of a prior act can be admitted, the court must find that the evidence's probative value substantially outweighs its prejudicial effects.  Thang, 145 Wash. 2d at 642.  When a history of abuse exists against the same

7

victim, the probative value of evidence of prior abuse is high. Grant, 83 Wn. App. at 108. The probative value of evidence used to explain a witnesses conflicting accounts also outweighs prejudice. Gunderson, 181 Wn.2d at 925. And evidence tending to show the defendant's motive has substantial probative value. State v. Arredondo, 188 Wn.2d 244, 264, 394 P.3d 348 (2017).

Here, evidence of the prior abuse goes to Bradford's motive and explains conflicting statements by I.B.; therefore, its probative value substantially outweighs any prejudicial effects.

Accordingly, the trial court did not err when it admitted the evidence of Bradford's prior abuse. Admission of the evidence was for a purpose other than to prove Bradford's character; the evidence was relevant; and its probative value outweighed its prejudicial effects.

4. Limiting Instruction

Bradford claims the court erred when it failed to provide a limiting instruction to the jury. The State contends that no error exists because Bradford explicitly declined a limiting instruction. We agree with the State.

If evidence of prior abuse is admitted, the party against whom the evidence is admitted is entitled to a limiting instruction upon request. Gresham, 173 Wn.2d at 420. A court is not required to give a limiting instruction sua sponte. State v. Russell, 171 Wn.2d 118, 122-23, 249 P.3d 604 (2011). The lack of a limiting instruction is not a reversible error when no instruction was requested. Russell, 171 Wn.2d at 123.

Here, Bradford did not request a limiting instruction. In fact, Bradford specifically declined a limiting instruction, stating "I don't want a limiting instruction. Even though [the court] ruled that 404(b) came in, it's my decision that I don't want that." Because Bradford declined a limiting instruction, the trial court did not err when it did not provide one to the jury.

### Unanimity Instruction

Bradford asserts that her right to a unanimous jury verdict was violated when the State presented evidence of multiple acts to serve as a basis for one count of criminal conduct but the court did not instruct the jury it must be unanimous as to the specific act. The State contends the assault was a continuing course of conduct and the court was not required to instruct the jury that they must agree on a separate, distinct act as the basis of the count. We agree with the State.

Whether a unanimity instruction was required is a question of law reviewed by this court de novo. State v. Lee, 12 Wn. App. 2d 378, 393, 460 P.3d 701 (2020).

In Washington, a defendant may be convicted only when a unanimous jury concludes that the criminal act charged in the information has been committed. State v. Stephens, 93 Wn.2d 186, 190, 607 P.2d 304 (1980). When the State presents evidence of multiple acts, any of which could serve as the basis for one count of criminal conduct, the State must either elect the act that will serve as the basis of the charge or the court must provide the jury with instructions on its duty to unanimously agree on which underlying criminal act was established beyond a

9

reasonable doubt.  State v. Petrich, 101 Wn.2d 566, 572, 683 P.2d 173 (1984) (overruled on other grounds).  An election of an act or unanimity instruction is only required where the State presents evidence of "several distinct acts." Petrich, 101 Wn.2d at 571.  If the evidence indicates the act was a "continuing course of conduct," then neither an election or unanimity instruction is required. Petrich, 101 Wn.2d at 571.

To determine whether an act is several distinct acts or a continuing course of conduct, "the facts must be evaluated in a commonsense manner."  State v. Handran, 113 Wn.2d 11, 17, 775 P.2d 453 (1989).  Courts will consider factors such as the location, timing, subject, and intent of the act to determine whether it is a single, continuous act or several, distinct acts.  See Lee, 12 Wn. App. 2d at 393; Handran, 113 Wn.2d at 17.  Where the evidence shows conduct occurring at one place, within a brief period of time, toward a single victim, and with intent to accomplish a single objective, the conduct is a continuous course of conduct.  Lee, 12 Wn. App. 2d at 394.  A "brief period of time" can include action over the course of a few hours, or even weeks.  State v. Crane, 116 Wn.2d 315, 330, 804 P.2d 10 (1991) (noting that an act which occurred between 3-5 p.m. was "continuous conduct"); State v. Craven, 69 Wn. App. 581, 849 P.2d 681 (1993) (finding repeated assaults during a three-week period constituted a continuing course of conduct).

Here, the assault against I.B. was a continuing course of conduct.  Even though a knife and a bat were both used during the assault, the incident occurred at a single location, within a short amount of time, and arose from the same

motive. The fact that some jurors may have believed the assault occurred with the knife and others believed it occurred with the bat does not change application of the continuing course of conduct. In Handran, two potential sources of an assault occurred (kissing and hitting), but the Court did not required a limiting instruction because the "two acts of assault were part of a continuing course of conduct." 113 Wn.2d at 775. Similarly, the assault on I.B. with the knife and bat was a continuing assault; therefore, a limiting instruction was not required.

Harmless Error

Assuming that a unanimity instruction should have been given, Bradford contends the failure to give a unanimity instruction was not harmless. The State disagrees, claiming that even if a unanimity instruction was required, the failure to provide one was harmless. We agree with the State.

When a unanimity instruction is required but not given, reversal is required unless the evidence establishes the error was harmless beyond a reasonable doubt. State v. Coleman, 159 Wn.2d 509, 512, 150 P.3d 1126 (2007). An error is harmless where no distinguishing evidence exists between the charges, such that "if the jury reasonably believed one incident occurred, [then] all the incidents must have occurred." State v. Bobenhouse, 166 Wn.2d 881, 894, 214 P.3d 907 (2009). When no conflicting evidence from witnesses exists and the defendant offers only a general denial, "the jury ha[s] no evidence on which it could rationally discriminate between the two incidents." Bobenhouse, 166 Wn.2d at 95.

Here, the jury was presented evidence of the incident from one witness, I.B.,[1] and Bradford offered only a general denial. No evidence distinguishes between the use of the knife and the use of the bat in the assault. Therefore, even if the two acts were not part of a continuing course of conduct, the lack of a unanimity instruction was harmless beyond a reasonable doubt.

Because no error occurred or any error was harmless, Bradford's right to a unanimous verdict was not violated.

We affirm.

_Smith, C.J._

WE CONCUR:

_Feldman, J._            _Mann, J._

---

[1] I.B.'s younger brother, C.C., did testify but denied the abuse. When asked about a bat, C.C. said "I don't know anything about a bat" and said there were no bats in the home. C.C. also testified that he did not want to talk and he was "being pressured." He said he felt like he was "going to lose somebody," and he just wanted to "live a life with my mom" and didn't "want anybody messing with our family."