IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

In the Matter of:

The Parenting and Support of Z.C.,

A minor child.

CORY HUGH EDGAR CLARKE,

Respondent,

v.

TAYLOR ANN DIKE[†],

Appellant.

No. 84897-6-I

DIVISION ONE

UNPUBLISHED OPINION

DíAZ, J. — Taylor Savage appeals the trial court's entry of a parenting plan. She claims there was insufficient evidence for the trial court's factual findings and that the court failed to make required findings, as well as other claimed irregularities. We remand the case for the trial court to modify the parenting plan so it is compliant with RCW 26.09.191(1). To do so, the trial court will need to (1) choose which parent will be awarded sole decision-making and (2) specify the

---

[†] At the time the petition was filed, the mother was known as Taylor Dike. We refer to her using her current name, Taylor Savage.

court's role in the dispute resolution process. Otherwise, we affirm.

## I. BACKGROUND

Taylor Savage and Cory Clarke met in 2014. Their child, ZC, was born in 2016.[1] It is undisputed that instances of domestic violence has strained this family's bond. Domestic violence has included incidents where the couple fought in July and November 2017, the latter of which resulted in Clarke's arrest and the entry of a no-contact order. And, in June 2022, ZC reported to his counselor, Dr. Jayme Fergoda, that Savage slapped him in the face.

In December 2017, Clarke petitioned the trial court for a formal parenting plan. In March 2018, the court entered an order appointing a guardian ad litem ("GAL"), however the order did not list the name of a GAL. The court addressed this with a nunc pro tunc order listing Sandra Holtzman as the GAL in January 2019. Holtzman already had released her investigation report in December 2018.

After trial, the court issued its findings of fact and conclusions of law in November 2022. After the court denied Savage's motion for reconsideration, she appealed the court's findings in January 2023. The final parenting plan was entered in February 2023, awarding the parties equal residential time with ZC (on a one week on, one week off schedule) and ordering Savage to address her anger issues. The plan also ordered joint decision-making on education and healthcare as well as "mediation" with "an agreed mediator" for dispute resolution.

## I. ANALYSIS

As a preliminary matter, Clarke alleges that Savage, now appealing pro se,

---

[1] We use the child's initials to protect their privacy.

made two procedural errors that foreclose our review. Pro se litigants are bound by the same rules of procedure and substantive law as licensed attorneys. Holder v. City of Vancouver, 136 Wn. App. 104, 106, 147 P.3d 641 (2006). Failure to comply with the Rules of Appellate Procedure may preclude appellate review. State v. Marintorres, 93 Wn. App. 442, 452, 969 P.2d 501 (1999). However, we liberally interpret our Rules of Appellate Procedure "to promote justice and facilitate the decision of cases on the merits." RAP 1.2.

First, Clarke argues Savage appealed from the trial court's findings of fact and conclusions of law, not the final parenting plan entered after this court accepted review. This fact does not foreclose our review. "The scope of a given appeal is determined," not only by the notice of appeal, but by "the assignments of error, and the substantive argumentation of the parties." Clark County v. W. Wash. Growth Mgmt. Hr'gs Review Bd., 177 Wn.2d 136, 144, 298 P.3d 704 (2013). "In a case where the nature of the appeal is clear . . . so that the Court is not greatly inconvenienced and the respondent is not prejudiced, there is no compelling reason for the appellate court not to exercise its discretion[.]" State v. Olson, 126 Wn.2d 315, 323, 893 P.2d 629 (1995). Here, no prejudice is apparent and, by appealing the trial court's findings, Savage necessarily implicated the validity of the resulting parenting plan and made the nature of the appeal clear. Thus, we choose to exercise our discretion to hear the matter.

Second, Clarke argues Savage did not provide the complete verbatim transcripts of trial testimony. Her filed record of proceedings ("RP") left out the direct examination of Clarke, the cross examination of Savage, and the testimony

3

of numerous witnesses.[2]  Indeed, it is the appellant's burden "to ensure that the reviewing court is apprised of all necessary evidence to decide the issues presented."  Tacoma S. Hosp., LLC v. Nat'l Gen. Ins. Co., 19 Wn. App. 2d 210, 220, 494 P.3d 450 (2021).  And "[w]here the appellant has failed to meet its burden . . . the reviewing court *may* decline to address the merits of an issue." Id. (emphasis added).  These omissions do not foreclose our review as we can still adequately assess the errors alleged, however.   In August 2023, Clarke supplemented the record with additional trial documents, but not transcripts of trial testimony.  That said, we believe we still are able to adequately address the issues presented despite any remaining omissions.  Thus, we choose to exercise our discretion to hear the matter.  We need not delay the resolution of this case any further.[3]

By way of summary, Savage claims (A) there was insufficient evidence to support the findings the court affirmatively made; (B) the trial court failed to make

---

[2] For example, transcripts of Clarke's cross examination and Savage's direct examination within the record before this court contain disclaimers that testimony has been omitted.  Further, the trial court's findings list all trial witnesses, including Dawn Landau, Anne Clarke,  Dr. Claudette Antuña, and Elijah Savage.  The testimony of all four of these witnesses appears to be missing from the record provided by Savage.

[3] As an example of another non-substantive, technical error, Savage claims the trial court made a procedural error warranting a remand.  Namely, Savage argues the "footer of the trial court's findings of fact and conclusions of law denote that the trial court adjudicated parentage pursuant to RCW 26.26A.  The trial court was not petitioned to decide parentage . . . it was petitioned to establish a permanent parenting plan."  The fact that the court may have entered its finding on the wrong form does not warrant immediate remand.  The court still documented its findings pursuant to a parenting plan.  "[T]here is no compelling reason for the appellate court not to exercise its discretion" to hear this matter.  State v. Olson, 126 Wn.2d 315, 323, 893 P.2d 629 (1995).

required findings, including a failure under RCW 26.09.191(1) to identify one decision-maker despite a finding of domestic violence, and in failing to identify the court's role in any dispute resolution process; (C) there were irregularities in the appointment of the GAL; and (D) she is entitled to attorneys fees.

A.      Sufficiency of the Evidence for the Trial Court's Findings

Savage contends that the trial court erred (1) by finding "Dr. Fergoda has recommended . . . a week on and week off schedule," (2) because it did not articulate how this proposed plan was in ZC's best interest, (3) by finding that "neither party was free from fault with regard to the chaotic and combative nature of the parties' relationship," and (4) that by finding "it was critical to the child's welfare that Taylor Savage address her anger and parenting issues[.]"

"Findings of fact are reviewed under a substantial evidence standard, defined as a quantum of evidence sufficient to persuade a rational fair-minded person the premise is true." Sunnyside Valley Irrig. Dist. v. Dickie, 149 Wn.2d 873, 879, 73 P.3d 369 (2003). "We will not substitute our judgment for the trial court's, weigh the evidence, or adjudge witness credibility." In re Marriage of Greene, 97 Wn. App. 708, 714, 986 P.2d 144 (1999). "We need determine only whether the evidence most favorable to the prevailing party supports the challenged findings, even if the evidence is in conflict." Thomas v. Ruddell Lease-Sales, Inc., 43 Wn. App. 208, 212, 716 P.2d 911 (1986). "So long as substantial evidence supports the finding, it does not matter that other evidence may contradict it. This is because credibility determinations are left to the trier of fact and are not subject to review." Burrill v. Burrill, 113 Wn. App. 863, 868, 56 P.3d 993 (2002).

5

Savage first challenges the trial court's finding that Dr. Fergoda recommended a week on week off schedule. The trial court found that

> Dr. Fergoda has recommended a parenting schedule that has less exchanges of the child, recommending a week on and week off schedule, but which includes a 2-4 hour midweek visitation by the parent who does not have primary residential time with the child that week, roughly covering the hours immediately after school through the dinner hour, but in any event not to extend past 7 PM.

Savage disputes this finding by citing to numerous portions of Dr. Fergoda's testimony, where she carefully tailored and qualified her testimony.[4] However, the record is clear that she still "recommended" fewer transitions between the households.[5]

In turn, it was still reasonable for the trial court to find Dr. Fergoda made

---

[4] SAVAGE'S ATTORNEY: Okay. And, um, are you here to make recommendations about who [ZC] should live with?
DR. FERGODA: No.
* * *
CLARKE'S ATTORNEY: So, Dr. Fergoda, you and I had a conversation maybe two weeks ago?
DR. FERGODA: Yes.
CLARKE'S ATTORNEY: And based on that conversation, we have made a *recommendation* to the court that, ah, the parenting plan go from a five, two, two, five schedule back to kind of what it was before, which is every other weekend with an exchange on Monday and, um, a mid-week visit for the parent who doesn't have [ZC] for that week, like a dinner, pickup after school and go to dinner, do you think that's more consistent in what would be in the best interest of [ZC]?
DR. FERGODA: I think it is worth a try, yes. (emphasis added).
[5] CLARKE'S ATTORNEY: Um, one last question or a couple questions. Just when you testified previously you testified to some behavioral, I don't know what you call them exactly, your exact words, as you stand here right now but difficulties that [ZC] was experiencing--
DR. FERGODA: Uh-huh.
CLARKE'S ATTORNEY: -- and testified some about the differences between households and stress and *recommended* at that point fewer transitions?
DR. FERGODA: Yes.
CLARKE'S ATTORNEY: Yes, um, and is that, um, still your recommendation?
DR. FERGODA: Yes. (emphasis added).

recommendations on the *structure* of ZC's living schedule rather than the character or parenting ability of Savage or Clarke.  Further, Dr. Fergoda based this recommendation on a lengthy discussion of ZC's behavioral issues which she stated were caused by the stress from frequent transitions.  As such, taking the evidence as a whole, a rational fair-minded person would be persuaded that the trial court fairly interpreted Dr. Fergoda's testimony as a recommendation for a week on week off schedule.  Sunnyside Valley, 149 Wn.2d at 879.

Savage next alleges the trial court "has not clearly stated on which basis the parenting plan proposed by [Clarke] is in the best interest of the child." However, the court did make a finding that "[t]he parenting plan proposed by Cory Clarke is consistent with the parenting schedule recommended by Dr. Fergoda and is in the best interests of the child."  As already discussed above, the court heard lengthy testimony from Dr. Fergoda, who has worked extensively with ZC since September 2021, on the merits of the week-on week-off plan, the behavioral needs of the child, and the capacities of each parent.  As such, a rational-minded person could be persuaded the plan was in ZC's best interest.  Id.

Third, Savage disputes the trial court's finding that neither parent was "free from fault" for the "mutual combat" in their relationship.[6]  Specifically, the court found

---

[6] In doing so, Savage quotes language from this court that "victims of domestic violence often attempt to placate their abusers in an effort to avoid repeated violence, and often minimize the degree of violence when discussing it with others."  State v. Grant, 83 Wn. App. 98, 107, 920 P.2d 609 (1996).  However, that case involved only one party with a history of domestic violence.  Specifically, the court was considering an explanation on why the wife minimized her husband's violence in a letter and let him visit her in violation of a no contact order.  Id. at 108.

> that the admissions made by Taylor Savage to CPS and to police agencies that the parties engaged in mutual combat and that Taylor Savage was not without fault in the acts of domestic violence alleged, indicates that neither party is free from fault with regard to the chaotic and combative nature of the parties' relationship.

This finding appears to be referencing a "Children's Administration Intake Report" issued by the Washington State Department of Social and Health Services ("DSHS") on July 20, 2017. The report states both that "Taylor says she is not without fault in the situation" and "Taylor reports both she and Cory have engaged in domestic violence." Additionally, while not referenced in the court's finding, the GAL report released in 2018 found there was "mutual combat" within the couple's relationship.

To contest this, Savage cites to a psychological report by Dr. Claudette Antuña furnished in November 2019, which stated "Savage is a victim of intimate partner violence," suffers from C-PTSD,[7] and noted "[n]o deficits in [Savage's] ability to parent[.]" Savage had the opportunity to present this report at trial and the court, acting as the factfinder, assigned it weight compared to the DSHS report. As we were not present at trial, we do "not decide the credibility of witnesses or weigh the evidence." In re A.W., 182 Wn.2d 689, 711, 344 P.3d 1186 (2015).[8] Despite the fact there is conflicting evidence, a rational fair-minded person could find that both parents were not without fault for domestic violence. Sunnyside

---

In the present case, both parties have been found to have contributed to domestic violence.

[7] Chronic and Complex Post Traumatic Stress Disorder.

[8] Savage's reply brief raised an argument generally citing to ER 404(b). However, we will not reach this argument as we need "not consider an argument raised for the first time in a reply brief." Matter of Dependency of G.M.W, 24 Wn. App. 2d 96, 115 n.6, 519 P.3d 272 (2022).

Valley, 149 Wn.2d at 879; Thomas, 43 Wn. App. at 212.

Finally, Savage disputes the trial court's finding that she should seek anger management and parenting counseling. The court ordered Savage to

comply with recommendations from Dr. Fergoda about obtaining therapy to address Taylor Savage's anger and parenting issues. The court agrees with Dr. Fergoda's testimony that it is critical to the child's welfare that Taylor Savage address her anger and parenting issues.

This order is referencing testimony by Dr. Fergoda that during a session "[ZC] said he wasn't doing that well . . . because [his] mom smacked [him] across the face yesterday." Further, Dr. Fergoda "could see there was a mark, ah, right under [ZC's] right eye or a red mark and some bruising by [ZC's] eyebrow." Savage's attorney did not object on hearsay grounds. Dr. Fergoda further testified that Savage admitted to striking ZC and did so because she was "frustrated and angry." Again, Savage's attorney did not object on hearsay grounds.

Based on this information, Dr. Fergoda testified that it was "absolutely critical" that Savage seek counseling and other resources related to parenting and anger management.

The trial court assessed Dr. Fergoda and Savage's testimony and made credibility determinations.[9] As an appellate court, we do not re-weigh the credibility of trial testimony. In re A.W., 182 Wn.2d at 711. From this testimony, a rational fair-minded person could agree with the trial court that Savage should follow Dr.

---

[9] The trial court found that "Taylor Savage did not provide an explanation in court as to why she slapped the child" and thus "[t]he discrepancies between Dr. Fergoda's testimony regarding the slapping incident and Ms. Savage's denial of being angry at the time lead this court to conclude that Ms. Savage was being less than candid in her testimony."

Fergoda's recommendations.  Sunnyside Valley, 149 Wn.2d at 879.

Savage now also argues Dr. Fergoda's testimony regarding her and ZC's statements is inadmissible hearsay.  Savage's attorney did not object on hearsay grounds during any relevant portion of Dr. Fergoda's testimony.  As such, Savage's arguments fail as "a hearsay objection is waived unless preserved through objection[.]"  State v. Townsend, 2 Wn. App. 2d 434, 442, 409 P.3d 1094 (2018) (citing State v. Smith, 155 Wn.2d 496, 501, 120 P.3d 559 (2005)).  Even assuming arguendo that ZC's statements were hearsay and the challenge was preserved, ZC's statements are admissible under the hearsay exception as statements made for the purposes of medical diagnosis or treatment.  ER 803(a)(4).[10]  And Savage's own statements would be considered an admission by a party-opponent and thus admissible.  ER 801(d)(2).

Thus, each of the trial court's findings is supported by substantial evidence.

B.      Required Findings and Required RCW 26.09.191(1) Restrictions

   1.  Required Findings

Savage further avers that the court failed to make explicit findings on dispute resolution, allocation of decision-making authority, residential provisions as, she believes, is required by law.  In doing so, Savage heavily relies on a 2017 case from our Supreme Court.  See Matter of K.J.B., 187 Wn.2d 592, 387 P.3d 1072 (2017).

---

[10] Dr. Fergoda is a mental health provider who regularly saw ZC.  ZC's statements were made during a regular session with Dr. Fergoda.  Thus, this case is distinguishable from State v. Lopez, 95 Wn. App. 842, 850, 980 P.2d 224 (1999), where the interview was "only for forensic purposes . . . to determine the existence and extent of sexual abuse for trial purposes."

K.J.B. was focused squarely on incarcerated parents facing termination of their parental rights under RCW 13.24.180. Id. at 594-96. K.J.B. did not discuss the procedural requirements for RCW 26.09.187 which sets the criteria for establishing parenting plans. The termination of an incarcerated parent's rights is legally distinct from proceedings to determine a parenting plan. Nonetheless, the court in K.J.B. held that "findings are not required when the statute requires only that the factor be considered." Id. at 604. In the present case, the relevant statute merely requires the court "shall consider" various factors. RCW 26.09.187(1), (2)(c), (3)(a). As such, while the trial court was required to consider the listed factors, it was not required to make explicit findings on them.

2. Required RCW 26.09.191(1) Restrictions

Savage separately also argues that the trial court was required to impose restrictions under RCW 26.09.191(1) as "the trial court was provided with substantial evidence that Mr. Clarke has a history of acts of domestic violence as defined in RCW 7.105.010."

A parenting plan's decision-making and dispute resolution provisions must comply with RCW 26.09.191. 26.09.187(1), (2)(a)(i). Specifically, .191 requires

> [t]he permanent parenting plan shall not require mutual decision-making or designation of a dispute resolution process other than court action if it is found that a parent has engaged in . . . a history of acts of domestic violence as defined in RCW 7.105.010[.]

26.09.191(1). Domestic violence is defined in part as

> "[p]hysical harm, bodily injury, assault, or the infliction of fear of physical harm, bodily injury, or assault; nonconsensual sexual conduct or nonconsensual sexual penetration; coercive control; unlawful harassment; or stalking of one intimate partner by another intimate partner"

11

RCW 7.105.010(9)(a). In short, if the trial court finds that "a parent" has a history of domestic violence, the court may not order mutual decision-making or a nonjudicial dispute resolution process.

"We review a trial court's parenting plan for abuse of discretion." In re Marriage of DeVogel, 22 Wn. App. 2d 39, 45, 509 P.3d 832 (2022) (citing In re Marriage of Katare, 175 Wn.2d 23, 35, 283 P.3d 546 (2012)). "'An abuse of discretion occurs when a decision is manifestly unreasonable or based on untenable grounds or untenable reasons.'" Id. "'We consider statutory construction as a question of law requiring de novo review.'" In re Marriage of Watson, 132 Wn. App. 222, 230, 130 P.3d 915 (2006) (quoting In re the Marriage of Caven, 136 Wn.2d 800, 806, 966 P.2d 1247 (1998)).

In the present case, the trial court found that

the admissions made by Taylor Savage to CPS and to police agencies that the parties engaged in mutual combat and that Taylor Savage was not without fault in the acts of domestic violence alleged, indicates that neither party is free from fault with regard to the chaotic and combative nature of the parties' relationship.

In other words, the court found both parents had a history of domestic violence. Nonetheless, when ordering the final parenting plan, the court ordered mutual decision-making on education and healthcare. Further, the plan's dispute resolution process requires the parties to partake in "mediation" with "an agreed mediator . . . in good faith, *before* going to the court[.]" (emphasis added). As the plan stands, the court is not required to play any role within the mediation process.

This court has interpreted the imposition of RCW 26.09.191(1) restrictions as mandatory because, "[o]n its face the statute affords no discretion, it prohibits

trial courts from requiring mutual decision-making or nonjudicial dispute resolution where there is a history of domestic violence." Matter of C.A.S, 25 Wn. App. 2d 21, 27-28, 522 P.3d 75 (2022). In doing so, the court expressly rejected arguments claiming the instances of domestic violence occurred in the distant past. Id. at 29. However, this court did not address a case in which where both parents were found to have contributed to domestic violence.

The text of RCW 26.09.191(1) does not expressly contemplate a situation where the trial court finds both parents to be responsible for domestic violence. However, .191(1) merely requires that "a parent" be found to have a history of domestic violence. In other words, on its face, the threshold of .191(1) is met if at least one parent is found to have a history of domestic violence.

It appears the purpose of RCW 26.09.191(1) limitations is to prevent future conflict between parents, or within families, with turbulent histories. When establishing a parenting plan, "the best interests of the child shall be the standard by which the court determines and allocates the parties' parental responsibilities." RCW 26.09.002. As "children's resilience and well-being are so closely tied to the physical and emotional safety of their primary caretakers (typically the non-offending parent), the legislature has recognized that ensuring this safety is consistent with children's best interests." GENDER & JUST. COMM'N, WASH. STATE SUP. CT., DOMESTIC VIOLENCE MANUAL FOR JUDGES 10-13 (2016), https://www.courts.wa.gov/content/manuals/domViol/chapter10.pdf [https://perma.cc/7P66-6RAU]. This goal is accomplished by limiting potential flashpoints and creating a greater degree of separation between the parties. It is

13

a natural extension of Matter of C.A.S. and natural reading of .191(1) to apply these tactics where *both* parents have engaged in domestic violence.

As such, we hold that the trial court abused its discretion by failing to order some kind of RCW 26.09.191(1) decision-making limitations. Accordingly, we remand the case for the trial court to modify the parenting plan such that one parent will be awarded decision-making authority in education and healthcare.[11]

Further, the court must specify its role within the dispute resolution process. As of now, the dispute resolution process is defined as "[m]ediation: an agreed mediator[.]" As of now, the plan does not require the court take any action in the dispute resolution process at all. RCW 26.09.191(1) prohibits the "designation of a dispute resolution process other than court action[.]" See also RCW 26.09.016 ("Mediation is generally inappropriate in cases involving domestic violence."). However, the statute is open ended on what form this "court action" must take. For example, the trial court could specify that, e.g., the mediator be court-appointed, or that, should good faith, properly supported mediation fail, the court will decide any remaining disputes. Id. We leave the precise nature of the "court action" to the discretion of the trial judge, but it must specify what action it will take as part of the dispute resolution process because there was a finding of domestic violence.

---

[11] Beyond designating a sole decision-maker, we leave additional considerations to the trial court's discretion. For example, this court has held that concerns on sole decision-making "may be alleviated by requiring that the [decision-making parent] give sufficient notice to the [other parent] . . . so the [non-decision-making parent] is able to seek timely court intervention[.]" Mansour v. Mansour, 126 Wn. App. 1, 11, 106 P.3d 768 (2004). In the present case, the trial court may require the decision-making parent to give 30-days' notice to the other parent of decisions regarding healthcare providers or education.

C.     <u>Guardian ad Litem</u>

Savage claims the trial court committed three errors concerning the GAL; namely, (1) the nunc pro tunc order appointing Holtzman was invalid, (2) the ex parte relief Holtzman obtained was invalid, and (3) Holtzman improperly conducted her GAL investigation.

1.  <u>Nunc Pro Tunc Order</u>

First, Savage contends that the nunc pro tunc order appointing Holtzman is invalid. Specifically, she claims the order did not record a judicial action already taken.

"The purpose of a nunc pro tunc order is to record some prior act of the court which was *actually performed* but not entered into the record at that time." <u>State v. Rosenbaum</u>, 56 Wn. App. 407, 410, 784 P.2d 166 (1989) (alteration in original). "Thus, a nunc pro tunc order is not a proper means to remedy omissions." <u>Id.</u> at 411. "[A] nunc pro tunc order is generally appropriate to correct only ministerial or clerical errors, not judicial errors." <u>State v. Hendrickson</u>, 165 Wn.2d 474, 479, 198 P.3d 1029 (2009). While caselaw is "scant . . '[i]n deciding whether an error is 'judicial' or 'clerical,' a reviewing court must ask itself whether the judgment, as amended, *embodies the trial court's intention*, as expressed in the record at trial.'" <u>Id.</u> (emphasis added).

In March 2018, the trial court entered an order appointing a GAL that did not name a specific person as the GAL. In January 2019, the trial court entered a nunc pro tunc order naming Sandra Holtzman as the GAL.

15

The trial court always intended to appoint a GAL, as evidenced by its March 2018 order. Issuing the nunc pro tunc order listing Holtzman merely confirmed this earlier action and simply confirmed Holtzman's involvement as GAL, which had been on going without objection. As such, the trial court properly entered the nunc pro tunc order, as it embodied its apparent intention. Hendrickson, 165 Wn.2d at 479.

## 2. Ex Parte Motion

Savage next contends that the GAL acted outside of the Guardian ad Litem Rules (GALR) "by seeking *ex parte* relief in this proceeding." This is referencing the "Ex Parte Order for Temporary Suspension of Visitation with Mother" entered in December 2018. Holtzman testified she sought this ex parte motion because "[Savage] said that she was going to move to California with [ZC]" and that "[Savage] had moved three times, um, in a short period of time and she had never given the father notice[.]"

In challenging the ex parte order, Savage cites to the GALR which state that "[a] guardian ad litem shall not have *ex parte communications* concerning the case with the judge(s) and commissioner(s) involved in the matter except as permitted by court rule or by statute." GALR 2(m) (emphasis added). However, the author's comments to GALR 2 state that "[t]he Bar believed that no ex parte *communications* between the GAL and the court should be permitted. However, the section was redrafted to make clear that *ex parte proceedings*, such as an application for a temporary restraining order, authorized by Civil Rule 65 or by statute were allowed." 4A ELIZABETH A. TURNER, WASHINGTON PRACTICE: RULES

PRACTICE GALR 2 author's cmts. (8th ed. 2023) (emphasis added). Further, the GALRs also state that "[a] guardian ad litem *shall have the right to file* pleadings, *motions*, notices memoranda, briefs, and other documents[.]" GALR 4(h)(1) (emphasis added). As such, Savage's opposition to the ex parte motion is based on a mistaken conflation of ex parte *communications* and ex parte *proceedings*.

3. Investigation

Savage also complains of how Holtzman conducted her GAL investigation. Specifically, she took issue with the fact that "Holtzman did not observe the parenting functions of Mr. Clarke or Ms. Savage" nor did Holtzman have "an in-person meeting with Ms. Savage."

Under the GALR, a GAL is required to "make reasonable efforts to become informed about the facts of the case and to contact all parties. A guardian ad litem shall examine material information and sources of information, taking into account the positions of the parties." GALR 2(g). The statute governing investigations for parenting arrangements contains permissive language that GALs "*may* consult any person who may have information about the child" or "*may* refer the child to professional personnel for diagnosis." RCW 26.09.220(2) (emphasis added). Nowhere does the statute require what Savage complains of.

Holtzman acted within her broad investigative authority as GAL. As this court has observed, "the particulars of the investigation are left to the GAL[.]" See, e.g., In re S.W., No.32519–9–III, slip op. at 10-11 (Wash. Ct. App. Oct. 8, 2015)

(unpublished), https://www.courts.wa.gov/opinions/pdf/325199.unp.pdf.[12]

Holtzman sought out and consulted a multitude of witnesses, records, and letters when compiling her report.[13]  Savage may not agree with the report, but she has not alleged, let alone established, that Holtzman's investigation violated any legal obligation.  "'Where no authorities are cited in support of a proposition, the court is not required to search out authorities, but may assume that counsel, after diligent search, has found none.'"  City of Seattle v. Levesque, 12 Wn. App. 2d 687, 697, 460 P.3d 205 (2020) (quoting DeHeer v. Seattle Post-Intelligencer, 60 Wn.2d 122, 126, 372 P.2d 193 (1962)), review denied, 195 Wn.2d 1031, 468 P.3d 621 (2020).

D.    Attorneys Fees

Savage seeks attorneys fees on appeal arguing that Clarke acted in "bad-faith."  She cites to Clarke being found in contempt of court for violation of a temporary parenting plan.  She also cites to her own trial testimony that Clarke called her employer, which had been disclosed within the proceedings, and made allegations of misconduct that she believes led to her dismissal.

---

[12] We may properly cite and discuss unpublished opinions where, as here, doing so is "necessary for a reasoned decision."  GR 14.1(c).  We cite this case for illustrative purposes.  However, the case is distinguishable as it dealt with termination of parental rights (governed by RCW 13.34.105, requires the GAL meet the child), not the creation of a parenting plan (governed by RCW 26.09.220, which contains no such requirement).  Despite their different statutory bases, we adopt the reasoning of In re S.W. in this context.

[13] Holtzman started her GAL investigation in September 2018.  She began by sending each parent a questionnaire.  Holtzman had a preliminary phone conversation with Savage which Holtzman described as volatile.  From this, Holtzman decided future contact with Savage would be in writing. Holtzman's report lists the ample evidence she considered, including the parent's questionnaires, witnesses listed by the parents, medical records, police reports, CPS reports, and numerous collateral letters.  Holtzman also spoke with Savage's mother, the only witness listed by Savage.

There is a two-part standard of review for a trial court's award or denial of attorneys fees.

> (1) we review de novo whether there is a legal basis for awarding attorney fees by statute, under contract, or in equity and (2) we review a discretionary decision to award or deny attorney fees and the reasonableness of any attorney fee award for an abuse of discretion.

Park Place Motors, Ltd. V. Elite Cornerstone Constr., LLC, 18 Wn. App. 2d 748, 753, 493 P.3d 136 (2021). The challenging party bears the burden of proving the trial court exercised its discretion in a way clearly untenable or manifestly unreasonable. In re Marriage of Knight, 75 Wn. App. 721, 729, 880 P.2d 71 (1994). Additionally, "[u]pon any appeal, the appellate court may, in its discretion, order a party to pay for the cost to the other party of maintaining the appeal and attorneys' fees in addition to statutory costs." RCW 26.09.140.

As an initial matter, Savage was already awarded attorneys fees pursuant to Clarke's contempt proceedings. According to the court's order, Clarke was required to pay her $500 for "lawyer fees and costs." Savage does not argue on appeal that this fee award was unreasonable. As such, we do not address that fee award here.

As for Savage's claims of bad faith, "[t]here are three types of bad faith conduct that warrant attorney's fees: (1) prelitigation misconduct; (2) procedural bad faith and (3) substantive bad faith." Dave Johnson Ins., Inc. v. Wright, 167 Wn. App. 758, 784, 275 P.3d 339 (2012). "Procedural bad-faith is unrelated to the merits of the case and refers to vexatious conduct during the course of litigation, such as delaying or disputing proceedings. Id. Other examples include "dilatory

tactics during discovery, failure to meet filing deadlines, misuse of the discovery process, and misquoting or omitting material portions of documentary evidence." Rogerson Hiller Corp. v. Port of Port Angeles, 96 Wn. App. 918, 928, 982 P.2d 131 (1999).

The conduct alleged by Savage was not procedural bad faith. The examples given by precedent are focused on frivolous litigation tactics. In contrast, Savage's allegations allege conduct extraneous to proceedings. The trial court, acting as the fact finder, had the discretion to assign weight to Savage's testimony. As the reviewing court, it is not within our purview to reassign weight or credibility to Savage's claims. Greene, 97 Wn. App. at 714. As such, we deny Savage's request for attorneys fees.

Clarke also seeks attorneys fees, generally asserting that "Savage's litigation of every issue, without merit, has forced [Clarke] to spend thousands of dollars on legal fees."[14] Finding Savage's actions were not frivolous, we deny his request.[15]

### III. CONCLUSION

For the reasons stated above, we remand the case for the trial court to

---

[14] Under RAP 18.9(a), an appellate court may award attorney fees to a party if the opposing party's appeal is frivolous. Childs v. Allen, 125 Wn. App. 50, 58, 105 P.3d 411 (2004). Resolving doubts in favor of the appellant, "[a]n appeal is frivolous if . . . the appeal presents no debatable issues upon which reasonable minds might differ and . . . that there is no possibility of reversal." Kinney v. Cook, 150 Wn. App. 187, 195, 208 P.3d 1 (2009).

[15] Clarke failed to elaborate on how Savage's actions here or elsewhere were frivolous beyond generally alluding to Savage's most recent action at the trial level. Savage, who is proceeding pro se, presented reasonably cogent briefing presenting issues that theoretically may have necessitated a remand, meaning her claims were plainly not frivolous.

modify the parenting plan so it is compliant with RCW 26.09.191(1). The trial court will need to (1) choose which parent will be awarded sole decision-making authority, and (2) specify the court's role in the dispute resolution process. Otherwise, we affirm.

Díaz, J.

WE CONCUR:

Chung, J.

Smith, C.J.